Tilghman, C. .T.
This is an action for money had and received, &e., brought by Mark Walker, the plaintiff below, against Nicholas Stafford, the plaintiff in error. The plaintiff, together with the defendant and eight others, formed themselves into a club, for the purchase of ten lottery tickets, in which they were to be equally concerned. Their agreement was in writing, dated the 13th of April, 1820, and was as follows: — “One dollar to be paid by each member, at the time of subscribing, and one dollar on each and every ticket, weekly, till paid for, at twelve dollars each ticket. The small prizes to be held by J. Jones & Co. until the tickets are paid for, either in cash or prizes. Any one subscriber, neglecting to pay his weekly dues, for three successive weeks, will forfeit to the club his title to the tickets, and his instalments before paid. The tickets to be delivered to the club, or their legal representative, any time after being paid for in the above way.” The plaintiff gave evidence tending to show, that he paid one dollar on the 13th of April, (the date of the agreement) one dollar on the 27th of April,., and one dollar on the 13th of May. The court below charged the jury, “ That if any one weekly payment was made in the course of three weeks, there was no forfeiture, although' the amount of three weeks’ weekly payments might be in arrear, and consequently the plaintiff’s interest in the tickets was not forfeited; if the jury should be of opinion that he paid one dollar on the 13th of April, one dollar on the 27th of April, and one dollar on the 13th of May; and, moreover, that even if this construction of the agreement was wrong, yet, if the jury should be satisfied that three payments, of one dollar each, were made at the several times before mentioned, the acceptance of the last payment by the boy in the broker’s office, was a waiver of the forfeiture, supposing there had been a forfeiture.” To this charge, the counsel for the defendant excepted. — Upon the first point, I am of opinion that the charge was right. In Construing the agreement, we ought not to be studious to create a forfeiture. The words are, that there shall be a forfeiture, in case of neglect to make the weekly payments for three successive weeks, that is, during three successive weeks. The word successive is not to be disregarded. There might have been the amount of three weekly payments in arrear, without a neglect for three successive weeks. For instance, if one dollar' had been paid at the end of each second week, there would have been three dollars in arrear at the end of six weeks, and yet *193 there would not have been a neglect of the weekly payments for three successive weeks. The plaintiff made payments sufficient to prevent a forfeiture according to the words of the agreement, and his ease is not so clearly against the spirit of it, as to induce me to be of opinion that his interest in the tickets and the payments which he actually made, was forfeited. But, upon the second point, I differ from the Court of Common Pleas. I cannot perceive, supposing there had been a forfeiture, upon what principle the broker’s boy Rad a right to remit it. The broker was no agent of the club, for this purpose — he was to receive.the money paid by each member, whenever it might be offered, and it was to be applied towards payment of the tickets bought by the club, which were held in pledge till they were paid for. But in the matter of forfeiture the broker was no way concerned, either as principal, or agent. It was an affair between the members of the club, with which no other person had any thing to do. It was a scheme devised for the purpose of stimulating each member to punctuality. If any one failed — the loss* would fall upon the club, and the club therefore were entitled to the benefit of the forfeiture.
But notwithstanding the charge was erroneous in this respect, yet upon the whole it was right; and therefore the judgment is not to be reversed. The jury were instructed, that there was a waiver of the forfeiture, in case they should be satisfied that payments of one dollar were made on the 13th and 27th of Aprils and 13th of May. But it is evident, that if they were satisfied of these facts, it was totally immaterial how the law was upon the point of waiver; because, there having been no forfeiture, there was nothing to waive. If this court differed in opinion from the Court of Common Pleas on the question of forfeiture, then the error as to the waiver would have been material. But as the case stands, it is immaterial. It is just the same, as if the jury had been directed to find for the plaintiff for two reasons, one good and one bad: — 1st. Because there was no forfeiture; 2d. Because the forfeiture was waived. If the first reason was good, the direction to find for the plaintiff was right, and the second point could not arise. The defendant, therefore, was not be injured by it. This will be manifest, when we consider that even had the charge been, that there was no waiver, still the verdict ought to have been for the plaintiff. If I could see the matter in any point of view, in which the defendant could have been injured by the mistake as to the waiver, I should be for reversing the judgment and ordering a ve-nire de novo. But I cannot. This is not like a bill of exceptions to evidence, where, if the evidence was improperly received, or rejected, it is impossible for a court of error to say what the verdict would have been, had no error intervened. But here, the exception was to the whole charge. We must therefore consider it as a whole; and it appearing, that the jury ought to have been charged to find for the plaintiff, in case they should be satis= *194 fied that he had made payments of one dollar each, on the 13th and 27th of Jlpril, and the 13th of May, I am of opinion that, upon the whole, the charge was right, and the judgment should be affirmed.
Gibson, J.
It is not disputed, that dues for three successive weeks were in arrear. Was not that the very thing against which the parties intended to guard ? “ Any subscriber, neglecting to pay his dues for three successive weeks, shall forfeit, &c.” On strict rules of grammatical construction, it may perhaps stand indifferent, whether the words “for three successive weeks,” are re-ferrable to the word “dues” as their antecedent, or to the words “ neglecting to pay;” although, as far as an argument from juxtaposition can operate, they would seem to be referrable to the former: otherwise we might expect to find the parties expressing themselves thus: “ Any subscriber, neglecting for three successive weeks to pay his weekly dues, shall forfeit, &c.” But to read the sentence thus, would require us to dislócate every joint of it; and even that would not help the argument, unless the word “his” were struck out; in which case, a payment of any dues in successive periods of three weeks, would be a compliance with the letter, but not with the spirit of the agreement. But the words “ his dues,” mean all his dues; and I cannot, therefore, see how a subscriber can, with any propriety, be said to have paid his dues, when he paid only a part of what was due. It is a fair construction of this agreement to say, that payments subsequent to the day, should be applied in succession, to the precedent instalments as they respectively became due; and this is the reason why the word “successive” was introduced. Payment at the day was not to be exacted; but a subscriber having discharged all dues up to the time of computation, was not to be in arrear for the dues of more than the two succeeding weeks. So that this new reading would lead exactly to the same consequences. But throwing aside grammatical analysis, which can in no case produce safe or satisfactory results, can we say, judging from the face of the whole paper, that the parties did not intend to secure payment of every instalment within three weeks after it should fall due; but that they meant by means of the penalty to enforce payment only of every third in-stalment, leaving the intermediate ones unpaid, and thus to let those who should pay only a third of their dues, into an equal participation of the benefit of the association, with those who should pay scot and lot? This is so very unreasonable, and I may add unjust, that I would not intend it to have been within their view, unless I were compelled to do so, by clear expressions, and the use of precise and unambiguous terms. There is nothing in the provision for retention of the small prizes by the broker, till the tickets should be paid for, to induce a belief that the parties calculated on the produce of those tickets, as a fund to supply deficiencies *195 of payment, to the extent of two-thirds of the.original subscription. This measure was doubtless intended, in the first instance, to secure a credit with the broker; and, in the second, to prevent the necessity of making insignificant dividends before the. drawing was finished, and the concerns of the association closed. On the other point, I concur with what has been said by the Chief Justice; and I am therefore of opinion, that the judgment ought to be reversed on both grounds.
Duwcan, J.
In every case where a forfeiture is demanded, on the delinquency of a contracting party, the construction ought to be strict. Nothing should be taken by intendment, so as to draw the party into a penalty.
This agreement was entered into on the 13th April, 1820. There were ten shares, divided into twelve different payments, each of one dollar; the first to be paid down, the rest in equal weekly payments of one dollar. The defendant in error, the plaintiff below, paid his hand money, one dollar; he paid one weekly instalment on the 27th of April, and one on the 13th of May. The prize was drawn on the 25th of May, and it is insisted on by the plaintiff in error, that he forfeited these payments and the prize money, under this clause of the agreement: “ Any one subscriber, neglecting to pay his weekly dues for three successive weeks, will forfeit to the club, his title to the tickets and his instalments before paid.” The construction of the Court of Common Pleas was, that if any one in-stalment was paid in the course of three weeks, the forfeiture did not arise, and in this I agree. Punctuality in the weekly payments was not exacted, nor was it strictly observed by any of the members; but if the parties suffered their instalments to accumulate for three successive weeks, so that three instalments in succession were in arrear at one time, then the forfeiture accrued. On a different construction, though he had paid up all his instalments, but irregularly, they could turn upon him and say, You have not paid any one of the instalments on the very day — you were always a day too late — you paid on Tuesday what you ought to have paid on Monday; and this you have done, not only for three weeks, but for eleven successive weeks, and we will take your twelve dollars, and, besides, confiscate your share. It is not for a daily default in the weekly payments, but for a neglect of payment of three instal-ments for three weeks in succession; he was not in arrear for three successive weeks, three successive instalments; at no time was he indebted three instalments. There did not appear, on the trial, any appropriation of these payments to have been made, either by the debtor or the creditor. In such case, it devolves on the court to make an equitable application. Field v. Holland, 6 Crunch, 28. Nothing can be more equitable, than to apply the payments to such instalments, as would prevent an occurrence on which the forfeiture was to take place. It would be most iniqui *196 tous to apply the payments otherwise. It cannot be conceived that it was the understanding either of the debtor or the creditor, so to apply the payment of the 13th of May, that the debtor could receive no possible benefit from it; and this circumstance would be equivalent to the exercise of that power, by which the debtor had the right to appropriate the payment to any one of the instalments; for one owing money on distinct contracts, has a right to apply the money, and that right may be exercised without express words; circumstances equivalent to the exercise of that power would be sufficient. 7 Wheat. 21. But here the contract was an entire one; the payments to be made at different times. Reason, then, would point out, without any indication from the debtor, that he intended so to apply it, as to discharge him from the penalty.
We all agree, that if forfeiture had accrued to the club, neither the broker’s boy nor the broker himself had power to dispense with the forfeiture, or remit the penalty. I need not dilate on this; so far the law was laid down erroneously, and, if it was not totally immaterial, quite impertinent and surplusage, and if in any way it could have injured the plaintiff in error, the judgment should be reversed, and a venire facias de. novo awarded. One would be loth to do this, when under the opinion given by a majority of the court, the result must necessarily be the same — answering no purpose, but that of delay, wasting the time of the court and accumulating costs on the party; and this consideration may, unknown to myself, have biassed my judgment. In the train of evils which follow the act requiring the judges to file their opinions in writing, is this, and it is not the least; that general opinions introduced by the judge in his charge for the first time, where such point was not made on the trial, and taken up hastily in the course of a long charge, are more liable to error, than where the attention of the court is called to particular propositions, on which its opinion is required; and this is the great superioi'ity of the bill of exceptions, which does not draw the whole matter into examination, but only the points to which it is taken, and where the party must lay his finger on the particulars excepted to; and the attention of the court is emphatically confined to the exceptions taken. Show, Parliamentary Cases, 120. 8 Johns. 493. 7 Wheat. 266, And the practice of spreading the whole charge on the record is discountenanced by the Supreme Court of the United States, 7 Wheat. 426. There it is said, “ that the practice of spreading the whole charge on the record is unnecessary and inconvenient, and may give rise to minute criticism and observation on points incidentally introduced for purposes of argument or illustration; and by no means essential to the merits of the cause, in cases of that nature. The substance of the charge only is to be examined, and if it appears, on the whole, that the law was justly expounded to the jury, general expressions, which might and would receive qualifications, if they were the direct point in judgment, are to be understood in such restrained sense.”
*197 Exceptions to the opinion of the court must be on facts not denied. The exception is preceded by a statement of facts, on which the opinion of the eourt is predicated — as, here, the time of payment. Now, here, the question of waiver of forfeiture on the conceded facts never could arise; because, from the uncontradicted state of facts, forfeiture never accrued. The whole matter of waiver was gratis dictum, mere surplusage, which in no possible view could injure the cause of the defendant. His defence was, forfeiture by reason of non payment; if the fact of payments to save from the penalty was not made out, his defence was a good one; if it was, he failed; and so, in substance, was the matter left to the jury. The two propositions of the court were founded on the same state of facts; the only question was, had the forfeiture accrued ? If it never had, then the second proposition was immaterial. The court here are of opinion, with the court below, that it never had. There were two legal reasons given by the court, — one sound, the other not. The unsound could not vitiate the sound. If the jury did not find the payments, in no event could the plaintiff recover; if they did, in every event he was entitled. This direction could not mislead the jury. The court said, finding the fact of payment, your verdict ought to be for the plaintiff, because he had not forfeited his share of the prize money;, but if he had, still your verdict ought to be for him, because there was a waiver; — quacunque via data, you are to find for the plaintiff. Now, it is sufficient for the plaintiff, if in una via he was entitled; if the first was right, the second could not injure; utile per inutile non vitiatur.
If the court had assigned twenty bad reasons in favour of the plaintiff, still, if there was one good reason, the judgment is right, though the reasons be wrong. The judgment is to be reversed, not the reasons. It is still a right judgment, though for a wrong reason. Newell v. Wood, 1 Munf. 555. A court of error does not sit to reverse judgments for erroneous opinions on abstract immaterial questions, but to give redress to parties aggrieved by the decisions of inferior courts, Preston v. Harvey, 2 Hen. & Munf. 67. And in this court, it has been often decided, that it is no ground for reversing a judgment, that the court below erred in their charge in a matter immaterial, and not pertinent to the issue. Numan v. Kapp, 5 Binn. 73. Brown v. Downing, 4 Serg. & Rawle, 498. Considering this case with relation to the facts given in evidence, which must always be done on bills of exceptions, (Vasse v. Smith, 6 Cranch, 226,) the question of waiver was quite an abstract one, irrelevant to the issue; because, to render it relevant, it must be granted the forfeiture did accrue.
If even evidence is received, not strictly admissible, if it affects not in any way the merits of the case, judgment will not be reversed. Hayt v. Hodge, 12 Johns. 307. So, in Preston v. Plarvey, 2 Hen. & Munf 67. It is not cause to reverse a judg *198 ment on a bill of exceptions for receiving improper evidence of a fact, if the same fact was afterwards proved by other conclusive evidence, stated in the bill. The former error was merged in it, and shut up the point for ever. He could not be injured by it; if afterwards legal and conclusive testimony was exhibited, it was rendered unnecessary for the jury to consider that by the superior and conclusive evidence. So, here, the point of waiver was for ever shut out, because the matter to be waived never for one moment existed; and here the merits rested on one particular fact, which applied to either proposition, — but the first proposition swallowed up the whole case, and left nothing for the second proposition to operate on. The case of Merrill v. Johnston’s Administrators, 1 Hen. & Munf. 450, is very like this; and there the judgment was thus entered: “This court, not approving of the opinion and second instruction, given by the court, as stated in the second exception, but considering the instruction as immaterial to the issue tried, is of opinion, that there is no error in the first instruction excepted to, nor in the judgment; therefore it is affirmed:” so I would be in favour of entering this judgment.
Judgment affirmed*.